UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MONTE BELL, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | CIVIL ACTION FILE NO.: |
| AMERICAN STANDARD INSURANCE COMPANY OF OHIO, a Wisconsin corporation, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Monte Bell ("Plaintiff"), by and through undersigned counsel, brings this class action, individually and on behalf of all others similarly situated, against American Standard Insurance Company of Ohio ("Defendant") and alleges as follows:

## INTRODUCTION

1. This class action lawsuit arises from Defendant's deceptive, fraudulent, and unfair scheme through which Defendant systematically undervalues total-loss vehicles in order to arbitrarily reduce the ultimate payment to insureds who make total loss claims under insurance policies issued by Defendant.

2. In the event of a "total loss" to an insured vehicle—*i.e.*, where repair of the vehicle is impossible or uneconomical—Defendant's uniform insurance policies

with Plaintiff and all putative Class members (defined below) promises to pay for the loss, limited to the actual cash value ("ACV") of the vehicle. Attached as **Exhibit A** is a copy of Plaintiff's Policy ("Policy"), which is materially identical to the policy that provides coverage to all members of the putative Class (defined below).

3.    Defendant ignores and avoids its straightforward contractual obligation by directing its third-party vendor to systematically reduce total loss evaluations. Specifically, to the amount of Defendant's total-loss payments, Defendant's third-party vendor identifies the price of comparable vehicles listed for sale in the relevant market. *After* the vendor determines the value of the comparable vehicles, Defendant instructs its vendor to apply an arbitrary and baseless flat-rate adjustment to the value of each "comparable vehicle," which Defendant and its vendor call a "typical negotiation adjustment."

4.    The "typical negotiation adjustment" is not based on any negotiations, typical or otherwise, and is not based on any market realities. Rather the "typical negotiation adjustment" ranges from 4-11% of the value of the "comparable vehicle." The vehicles with lesser value are subject to a greater percentage reduction, with the percentage adjustment becoming lower as the value of the "comparable vehicles" increases. This percentage reduction artificially reduces the total-loss payment for the totaled vehicle and, with the sliding percentage scale, ensures that every total loss payment Defendant makes to insureds is significantly, but

unconscionably, reduced.

5.    An integral part of Defendant's fraudulent scheme is a provision of the Policy which requires the parties to submit to an appraisal of the loss if there is a disagreement over the ACV. The appraisal provision requires the insured and the insurer to each hire, at their own expense, an appraiser, and to bear equally the expenses of an umpire selected by the two appraisers, as well as any other expenses of the appraisal. Since the amount by which the insureds' total-loss claims are underpaid is likely less (or only marginally greater) than the cost of the appraisal, Defendant knows and intends that the insureds will forego the appraisal process and accept the artificially determined loss-payment for the total-loss claims. As designed by Defendant, the appraisal provision prevents plaintiff and the Class from effectively vindicating their rights under the Policy.

6.    To be clear, this case does not present a dispute about ACV, which Defendant never determines. Rather, this case challenges Defendant's systematic and fraudulent scheme to mis- value insureds' vehicles that are declared a total loss in a manner which does not comport with representations made by Defendant or obligations undertaken by Defendant in its Policies, in order to illegally increase its own profits. This is an issue that cannot be resolved through an appraisal process.

7.    Moreover, the Policy is an unconscionable contract of that was unilaterally drafted by Defendant with full knowledge of the unfair scheme it intended to employ to artificially reduce the value of its insured's vehicles, and

neither Plaintiff nor the members of the Class had any rollin drafting its terms.

8.    Through Defendant's deceptive, fraudulent, and unfair scheme, Defendant breached its contracts and the covenant of good faith and fair dealing with its insureds, and was unjustly enriched.

9.    As a result of Defendant's deceptive, fraudulent, and unfair scheme, Plaintiff did not receive the benefit of the bargain, and thus sustained actual damages.

10.    By this action, Plaintiff, individually and on behalf of the Class, seek damages andinjunctive and declaratory relief.

## PARTIES

11.    Plaintiff Monte Bell, at all relevant times, was a Georgia citizen. Plaintiff owned a 2000 Ford F-150 that was insured under a Policy issued by Defendant, which was deemed a total loss on or around November 27, 2017. Plaintiff made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Plaintiff for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Plaintiff's total loss claim at $2,523.00. The market valuation report listed values of five different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation adjustment" of approximately 9% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 3-4, attached as **Exhibit B**.

12.    Defendant American Standard Insurance Company of Ohio is a Wisconsin company with its principal place of business in Wisconsin. Defendant provides insurance coverage throughout the United States for first-party property damage under collision and/or comprehensive coverage.

## JURISDICTION AND VENUE

13.    Minimal diversity exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)-(b), and 1453. Plaintiff and the proposed class members are citizens of the State of Georgia. Defendant is a Wisconsin Corporation that has its corporate headquarters in Wisconsin, and, at all relevant times hereto, Defendant was engaged in the business of marketing and selling insurance policies and adjusting insurance claims in the State of Georgia.

14.    Plaintiff estimates that there are more than 100 putative class members, and the aggregate compensatory damages (in the amount of the typical negotiation adjustments that were deceptively deducted), claimed by Plaintiff and the Class are estimated in good faith to exceed $5,000,000.

15.    Venue is proper in this District under 28 U.S.C. § 1391, as a substantial portion of the conduct giving rise to Plaintiff's claims occurred in this District, and Defendant transacts business in this District.

## FACTUAL ALLEGATIONS

### "Typical Negotiation"

16.    When valuing total-loss automobile claims, insurance companies like

Defendant use third party companies to determine and pay the ACV of an insured's totaled vehicle subject only to reduction for any policy deductible.

17.    To avoid full payment under its policies, Defendant has devised a blatant and unlawful scheme to reduce its total-loss payments to insureds, by use of a deceptive, arbitrary and baseless "typical negotiation adjustment."

18.    Specifically, Defendant purports to determine the ACV of total-loss vehicles via a third-party vendor, Audatex or AudaExplore, through a system called Autosource Market-Driven Valuation ("Autosource"). The Autosource system identifies the price of comparable vehicles sold or listed for sale online in the relevant market. Autosource then, at Defendant's directive, applies a deceptive and arbitrary "typical negotiation adjustment" to the value of the comparable vehicles before determining the total-loss payment Defendant will make.

19.    Defendant's "typical negotiation adjustment" is arbitrary and unsupportable. When offering the total-loss payment to an insured whose car was totaled, Defendant represents that the "typical negotiation adjustment" reflects some sort of average difference between a dealer list price and what the dealer would be willing to sell it for. *See* Ex. B at 3 ("The selling price *may* be substantially less than the asking price. In the case of this 2000 Ford F-150, the difference between the asking price and the selling price is generally 9%."). However, this disclosure is never made prior to determining the total-loss payment Defendant will make.

20.    Moreover, the across-the-board 4-11% reduction on used vehicles'

internet prices is based on no negotiations, typical or otherwise, and does not reflect market realities, and neither relevant state insurance laws and regulations nor the Policy permit Defendant to make this arbitrary deduction. Indeed, Defendant applies the "typical negotiation adjustment" without contacting the identified dealerships or sellers, or considering whether the online retailer ever discounts its vehicles. Notably, in applying a universal percentage-based "typical negotiation adjustment" reduction, Defendant failed to consider that it is increasingly the practice in the used car market to avoid price negotiation by implementing "no haggle" pricing, particularly as to internet-posted prices.[1] Indeed, in addition, particularly during the COVID-19 pandemic, and the related supply chain problems with parts such as electronics for vehicles, used cars have been selling for a premium, with sale price typically *increasing* from posted price if it changes at all.[2]

21.    Rather, the arbitrary "typical negotiation adjustment," ranging from 4-11% of the value of the comparable vehicle is keyed only to the value of that vehicle, as the value of the "comparable vehicles" increases. This sliding percentage scale does not reflect "actual value" of the vehicle vehicles or any "typical negotiation,"

---

[1] *See, e.g.*, https://www.autonationlincolnclearwater.com/autonation-one-price.htm (last visited Sept. 24, 2021) ("Not only is our no-haggle price low, it's guaranteed."); https://www.carmax.com/about-carmax (last visited May September 26, 2021) ("our 'no-haggle' prices transformed car buying and selling from a stressful, dreaded event into the honest, straightforward experience all people deserve.").

[2] *See*          https://www.cnbc.com/2021/08/07/used-car-prices-to-stay-high-until-automakers-fix-production-issues.html (last visited Sept. 16, 2021); https://abc7chicago.com/car-chip-shortage-2021-prices-auto-gm-closes-factories/11005980/ (last visited Sept. 16, 2021).

but rather is meant to ensure that Defendant's total loss payments are significantly reduced, even when a vehicle is not valuable.

22.    Plaintiff does not contest the vehicles Defendant selected to use as comparable vehicles. Plaintiff does not contest Defendant's representations of the listed price of comparable vehicles. Plaintiff does not contest the value assigned to differences in trim, condition, mileage, packages, and equipment between comparable vehicles and the total-loss vehicle. What Plaintiff contests is that Defendant instructed Audatex to apply arbitrary, capricious, and invalid "typical negotiation" adjustment across-the-board in determining its total-loss payments.

**Defendant's Deceptive and Unfair Appraisal Process**

23.    An integral part of Defendant's fraudulent scheme is a provision of Policy which requires the parties to submit to an appraisal if there is a disagreement over the ACV (which Defendant never determines). The appraisal provision requires the insured and the insurer to each hire, at their own expense, an appraiser and to bear equally the expenses of an umpire selected by the two appraisers, as well as any other expenses of the appraisal. Since the amount by which the insureds' total-loss claims are underpaid is likely less than the cost of the appraisal, Defendant knows that the insureds will forego the appraisal process and accept the artificially reduced ACV of the vehicle for their total-loss claims. As designed, the appraisal clause prevents plaintiff and the Class from effectively vindicating their statutory and common law causes of action.

24.    To be clear, this case does not present a dispute about ACV, which Defendant never determines. Rather, this case challenges Defendant's fraudulent scheme to illegally undervalue insureds' vehicles that are declared a total loss, in order to increase its own profits. This is an issue that cannot be resolved through an appraisal process that is part of that very scheme.

25.    Moreover, the Policy is an unconscionable contract of that was unilaterally drafted by Defendant with full knowledge of the unfair scheme it intended to employ to artificially reduce the value of its insured's vehicles, and neither Plaintiff nor the members of the Class had any roll in drafting its terms.

## CLASS ACTION ALLEGATIONS

26.    Plaintiff brings this action individually and as a class action under Fed. R. Civ. P 23(a) and (b), on behalf of the following proposed Class:

> All Georgia citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similarly-titled adjustment.

27.    Excluded from the Class are Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Judge(s) and Court staff assigned to this case and their immediate family members.

28.    Plaintiff reserves his right to amend the Class definition if discovery

and further investigation reveal that any Class should be expanded or narrowed, divided into additional subclasses under Rule 23(c)(5), or modified in any other way

29.    **Numerosity.** The members of the Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are thousands of Class members, the precise number is unknown to Plaintiff but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

30.    **Commonality and Predominance.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a.  whether Defendant's practice of applying a "typical negotiation adjustment" in determining total-loss payments results is a breach of its obligation to pay ACV;

    b.  whether Defendant's failure to disclose its use and use of a "typical negotiation adjustment" when determining total-loss payments for a totaled vehicle until such an assessment is made is deceptive to a reasonable consumer, unconscionable or otherwise a violation of the relevant consumer protection statute(s);

    c.  whether Defendant's practice of applying a "typical negotiation

adjustment" in determining total-loss payments results is a breach of its

obligation to pay ACV breached the covenant of good faith and fair

dealing it has with Plaintiff and the other Class members;

d.  Whether Defendant was unjustly enriched at the expense of Plaintiff

and the otherClass members as a result of its conduct

e.  whether Plaintiff and the Class are entitled to injunctive relief based on

Defendant's conduct; and

f.  whether Plaintiff and the Class are entitled to damages and the measure

of damagesowed to them.

31.    **Typicality.** Plaintiff's claims are typical of the other Class members'

claims because Defendant undertook the same practice of applying a "typical

negotiation adjustment" indetermining total-loss payments under materially similar

policy provisions requiring payment of ACV. Plaintiff's claims are based upon the

same legal theories as those of the other Class members.Plaintiff and the other Class

members sustained damages as a direct and proximate result of the same wrongful

practices in which Defendant engaged. Plaintiff's claims arise from the same

practices and course of conduct that give rise to the claims of the other Class

members.

32.    **Adequacy of Representation.** Plaintiff is an adequate representative

of the Classbecause Plaintiff's interests do not conflict with the interests of the other

Class members whom he seeks to represent, Plaintiff has retained counsel competent

and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

33. **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, such that it would be impracticable for the Class members to individually seek redress for Defendant's wrongful conduct. Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**COUNT 1**
**BREACH OF CONTRACT**

34. Plaintiff repeats and re-alleges all previously alleged paragraphs as if fully alleged herein.

35.    This Count is brought by the Plaintiff on behalf of the Class.

36.    Plaintiff and each of the other Class members were insured under a policy issued by Defendant, as described herein.

37.    Plaintiff and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

38.    Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiff and each of the other Class members the ACV of their totaled vehicles.

39.    Defendant, however, failed to pay the ACV of Plaintiff's and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

40.    Defendant also failed to comply with Georgia law, which requires insurers to use one of the following four methods to determine "the actual cost less any deductible provided in the policy, to purchase a comparable automobile[:]" "1. The cost of two or more comparable automobiles in the local market area…"; "2. "The cost of two (2) or more comparable automobiles in areas proximate to the local market area…"; "3. One of two or more quotations obtained by the insurer from two or more licensed dealers located within the local market area… when the cost of comparable automobiles are not available in subparagraphs (a)1. and 2. Above[]";

13

"4. Any source for determining statistically valid fair market values that meet all of the following criteria which may be in electronic or printed format: (i) The source shall give primary consideration to the values of vehicles in the local market area, or may consider data on vehicles outside the area when comparable vehicles have not been available for data collection in the local market area. (ii) The source's database shall produce values for at least 85% of all makes and models for at least the last fifteen (15) model years, taking into account the values of all major options for such vehicles. (iii) The source shall produce fair market values based on current data available from the area surrounding the location where the insured vehicle was principally garaged or a necessary expansion of parameters (such as time and area) to assure statistical validity." Georgia Rules and Regulations Rule 120-2-52-.06.

41.    Thus, Defendant failed to pay Plaintiff and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiff and each of the other Class members.

42.    As a result of such contractual breaches, Plaintiff and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 2
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

43.    Plaintiff repeats and re-alleges all previously alleged paragraphs as if

fully alleged herein.

44.     This Count is brought by the Plaintiff on behalf of the Class.

45.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

46.     Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

47.     Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of their total-loss payments to insureds, as alleged herein.

48.     Defendant also failed to comply with Georgia law, which requires

insurers to use one of the following four methods to determine "the actual cost less any deductible provided in the policy, to purchase a comparable automobile[:]" "1. The cost of two or more comparable automobiles in the local market area..."; "2. "The cost of two (2) or more comparable automobiles in areas proximate to the local market area..."; "3. One of two or more quotations obtained by the insurer from two or more licensed dealers located within the local market area... when the cost of comparable automobiles are not available in subparagraphs (a)1. and 2. Above[]"; "4. Any source for determining statistically valid fair market values that meet all of the following criteria which may be in electronic or printed format: (i) The source shall give primary consideration to the values of vehicles in the local market area, or may consider data on vehicles outside the area when comparable vehicles have not been available for data collection in the local market area. (ii) The source's database shall produce values for at least 85% of all makes and models for at least the last fifteen (15) model years, taking into account the values of all major options for such vehicles. (iii) The source shall produce fair market values based on current data available from the area surrounding the location where the insured vehicle was principally garaged or a necessary expansion of parameters (such as time and area) to assure statistical validity." Georgia Rules and Regulations Rule 120-2-52-.06.

49.    As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

a.  Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

b.  Failing to pay insureds the ACV of their total-loss vehicles;

c.  Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

d.  Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

50.    Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Class. Plaintiff's and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 3
## UNJUST ENRICHMENT

51.    Plaintiff repeats and re-alleges all previously alleged paragraphs as if fully alleged herein.

52.    This Count is brought by the Plaintiff on behalf of the Class.

53.    Plaintiff pleads this claim separately as well as in the alternative to his other claims, as without such claims he would have no adequate legal remedy.

54.     Defendant requested and received a monetary benefit at the expense of Plaintiff and Class members in the form of premium payments for automobile insurance coverage.

55.     Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

56.     Defendant also failed to comply with Georgia law, which requires insurers to use one of the following four methods to determine "the actual cost less any deductible provided in the policy, to purchase a comparable automobile[:]" "1. The cost of two or more comparable automobiles in the local market area…"; "2. "The cost of two (2) or more comparable automobiles in areas proximate to the local market area…"; "3. One of two or more quotations obtained by the insurer from two or more licensed dealers located within the local market area… when the cost of comparable automobiles are not available in subparagraphs (a)1. and 2. Above[]"; "4. Any source for determining statistically valid fair market values that meet all of the following criteria which may be in electronic or printed format: (i) The source shall give primary consideration to the values of vehicles in the local market area, or may consider data on vehicles outside the area when comparable vehicles have not been available for data collection in the local market area. (ii) The source's database shall produce values for at least 85% of all makes and models for at least the last

fifteen (15) model years, taking into account the values of all major options for such vehicles. (iii) The source shall produce fair market values based on current data available from the area surrounding the location where the insured vehicle was principally garaged or a necessary expansion of parameters (such as time and area) to assure statistical validity." Georgia Rules and Regulations Rule 120-2-52-.06.

57.    If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Georgia law, Plaintiff and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

58.    Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiff and the Class members to the detriment of Plaintiff and the Class members.

59.    Plaintiff and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 4
## DECLARATORY JUDGMENT

60.    Plaintiff repeats and re-alleges all previously alleged paragraphs as if

fully alleged herein.

61. This Count is brought by the Plaintiff on behalf of the Class.

62. A dispute between Plaintiff and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiff and the Class arising under that policy.

63. Plaintiff, individually and on behalf of the Class, seeks a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

64. Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiff and members of the Class.

65. As a result of these breaches of contract, Plaintiff and the Class members have been injured.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully seeks judgement in Plaintiff's favor and in favor of the Class as follows:

A. An Order certifying this action as a Class Action and appointing Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

B. An award of damages (including actual, compensatory, statutory, and punitive, as provided by law) and restitution to Plaintiff and the Class in an amount to be determined at trial, plus interest, in accordance with law;

C. Disgorgement of Defendant's profits;

D. Appropriate preliminary and/or final injunctive or equitable relief against the conduct of Defendant's described herein;

E. An award Plaintiff's and the Class' costs of suit, including reasonable attorneys' fees as provided by law; and

F. An award such further and additional relief as is necessary to redress the harm caused by Defendant's unlawful conduct and as the Court may deem just and proper under the circumstances.

Dated: April 7, 2022.

Respectfully submitted,

**SHAMIS & GENTILE, P.A.**
*/s/ Andrew J. Shamis*
Andrew J. Shamis, Esq.
Ohio Bar No. 100846
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

***Counsel for Plaintiff and the Proposed Class***